UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH FLICKINGER,

      Plaintiff,

v.                       Case No. 8:20-cv-2212-T-33CPT

LOVE'S TRAVEL STOPS & COUNTRY
STORES, INC.,

      Defendant.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Love's Travel Stops & Country Stores, Inc.'s Motion to Dismiss Amended Complaint and Motion to Strike (Doc. # 31), filed on December 2, 2020. Plaintiff Deborah Flickinger responded on December 15, 2020. (Doc. # 32). For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part. The Motion to Strike is granted.

**I.   Background**

This case arose out of a slip-and-fall at a Love's truck stop in Richmond Hill, Georgia. (Doc. # 30). On August 19, 2019, Flickinger visited the truck stop to refuel her vehicle and repair a blown-out tire. (Id. at ¶ 24-25). While Flickinger was in her parked vehicle awaiting a mechanic, it began raining. (Id. at ¶ 27-29). At some point, a Love's

1

employee told Flickinger that a mechanic was available and instructed her "to pull into the middle bay at the Love's repair center." (Id. at ¶ 30-31). Flickinger was further instructed to park "her tractor truck and trailer such that [the] majority of her tractor truck was parked beyond the back exit of the middle bay, and therefore not under the roof of the middle bay of the Love's repair center and exposed to the rain[,] and her trailer was parked within the covered part of the middle bay." (Id. at ¶ 37). Flickinger did so, and the mechanic proceeded to repair her tire. (Id. at ¶ 39).

About an hour later, the mechanic completed the repair, the entire time of which Flickinger remained in her vehicle. (Id. at ¶¶ 40, 42). The Love's mechanic then "invited [Flickinger] to back her tractor truck and trailer up into the middle bay . . . so that she could exit her tractor truck under the roof of the middle bay to avoid exiting her tractor truck in the rain to take care of the bill associated with the services provided." (Id. at ¶ 57). Flickinger did so, and when she stepped out of her vehicle, she faced "the interior of her tractor truck so that she could hold on to the handles of her tractor truck with both hands so that she may safely step down the steps of her tractor truck." (Id. at ¶ 64). This "exiting procedure," which Flickinger found to be the

"safest way for her to exit her tractor for her own personal safety," prevented her "from seeing the accumulation of water on the shiny concrete floor that was underneath and beside the driver's side of her tractor truck as she was exiting her tractor truck." (Id. at ¶¶ 65, 68). Flickinger "immediately slipped and fell when she placed her foot onto the watery wet shiny concrete floor." (Id. at ¶ 69). Flickinger avers that she was not warned of this accumulation of water. (Id. at ¶ 92-94). Neither were there any signs warning customers that the "shiny concrete floors were slippery when wet." (Id. at ¶ 96).

Flickinger alleges that her backing the vehicle into the middle bay, as invited by the Love's employee, caused additional water to accumulate "onto the shiny concrete floor of the middle bay." (Id. at ¶ 62). And, Flickinger alleges that "the Love's mechanic was present and saw, or should have seen, the water accumulated on the shiny concrete floor underneath and beside the driver's side of [Flickinger's] tractor truck before [she] exited her tractor truck." (Id. at ¶ 63). As a result of this slip and fall, Flickinger has "sustained serious and permanent injuries to her left upper leg, left knee, a fracture to her left femur that required surgery, hips, [lower] back[,] and/or aggravated a pre-

existing condition in those areas." (Id. at ¶ 114).

Flickinger initially filed this action in state court on August 11, 2020. (Doc. # 1-1). On September 18, 2020, Love's removed the case to this Court on the basis of diversity jurisdiction. (Doc. # 1). On November 4, 2020, the Court dismissed the complaint without prejudice for failure to state a claim, granting leave to amend. (Doc. # 25). Flickinger filed an amended complaint on November 18, 2020. (Doc. # 30). The amended complaint includes one count for premises liability. (Id.).

On December 2, 2020, Love's moved to dismiss the amended complaint for failure to state a claim. (Doc. # 31). Love's also moves the Court to strike three exhibits from the amended complaint. (Id.). Flickinger has responded (Doc. # 32), and the Motions are now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of

Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).

But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(quotations and citations omitted). Courts are not "bound to

accept as true a legal conclusion couched as a factual

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The

Court must limit its consideration to "well-pleaded factual

allegations, documents central to or referenced in the

complaint, and matters judicially noticed." La Grasta v.

First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Under Federal Rule of Civil Procedure 12(f), a court

"may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."

Fed. R. Civ. P. 12(f). However, motions to strike are

considered drastic remedies, and are thus disfavored by

courts. See Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F.

Supp. 2d 1345, 1348 (M.D. Fla. 2002). Indeed, they are

generally denied "unless the allegations have no possible

relation to the controversy and may cause prejudice to one of the parties." <u>Agan v. Katzman & Korr, P.A.</u>, 328 F. Supp. 2d 1363, 1367 (S.D. Fla. 2004) (citations omitted).

## III. <u>Analysis</u>

Love's moves to dismiss the amended complaint in its entirety and strike certain "unauthenticated images with handwritten notes and claims" therefrom. (Doc. # 31). The Court will address each Motion in turn.

### A. <u>Motion to Dismiss</u>

Love's argues that the amended complaint should be dismissed for the following reasons: (1) Flickinger has not alleged that there was unusual accumulation of water on the floor; (2) Love's does not owe Flickinger all of the duties alleged in the amended complaint; (3) Flickinger has not sufficiently alleged a claim for failure to warn; (4) Flickinger has not described the "other elements" she alleges may have contributed to her fall; and (5) the amended complaint does not "make all statements . . . in consecutively numbered paragraphs, and fails to limit statements to a single set of circumstances." (Doc. # 31 at 6-9).

#### 1. <u>Claim for Premises Liability</u>

First, Love's argues that the amended complaint should be dismissed for failure to state a claim under Georgia law

because Flickinger has not provided "any factual allegations relative to the amount of water that was allegedly present or otherwise supporting that there was an unusual accumulation of water on the floor" where Flickinger fell. (Doc. # 31 at 6-7). Flickinger responds that she has sufficiently pled that there was an unusual accumulation of water. (Doc. # 32 at 8).

"Under Georgia law, a premises owner owes a duty of reasonable care to its invitees, and can be held liable for its failure to exercise ordinary care to keep the premises safe."[1] Rivera v. Capmark Fin., Inc., No. 1:12-CV-1097-CAP, 2013 WL 12248217, at *2 (N.D. Ga. Feb. 28, 2013). When a premises liability action is based on a slip and fall, the plaintiff must plead that: "(1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." Am. Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 28 (Ga. 2009). "If the fall is caused by a natural occurrence, the risk of which the invitee should appreciate, the [owner] may be held

---

1. The Court addressed the choice-of-law issue in this case in its previous order granting Love's motion to dismiss, holding that Georgia law applies. (Doc. # 25 at 4-6).

liable only if the risk has become unreasonable." Roberts v. Outback Steakhouse of Fla., Inc., 641 S.E.2d 253, 254 (Ct. App. Ga. 2007). However, "[i]f . . . the risk is abnormal, such as an unusual accumulation of water, the [owner] may be liable for failing to alleviate the condition." Id. at 255.

At this stage, Flickinger has pled sufficient facts to state a premises liability claim under Georgia law. As to the first prong, the amended complaint alleges that the Love's mechanic invited Flickinger to park precisely where she stepped out and fell on the accumulated water, that the mechanic was aware that it was raining, and that it continued to rain while he worked on her vehicle for an hour. (Doc. # 30 at ¶ 74-77). And, this is not a typical slip-and-fall where water accumulated from rain outside or at the entrance of a building such that a puddle could not plausibly constitute an unreasonable hazard. See, e.g., Roberts, 641 S.E.2d at 254-55 ("And we have held that the *normal* accumulation of water at the entrance of a business during a rainy day is not an unreasonable hazard." (emphasis in original)). Indeed, unlike Love's citations, the fall occurred in a covered portion of the middle bay, and although it was raining outside, such an accumulation of water might be considered unreasonable. (Doc. # 30 at ¶¶ 58, 61, 69).

Further, at the motion-to-dismiss stage, Flickinger need not painstakingly detail how much water was on the floor of the middle bay. See Fitzgibbons v. Saxon Mortg. Servs., Inc., No. 1:11-CV-3722-RLV-JFK, 2012 WL 13012808, at *4 (N.D. Ga. June 5, 2012) (explaining that the factual allegations in a complaint need only "possess enough heft to set forth a plausible entitlement to relief" (citation omitted)). Neither need Flickinger detail what other potential elements may have made the accumulation of water more dangerous. See Kroger Co. v. Schoenhoff, 751 S.E.2d 438, 441-42 (Ct. App. Ga. 2013) (affirming the denial of the proprietor's motion for directed verdict where the issue of the proprietor's knowledge of a puddle of water was given to the jury and no other elements but water were alleged to have caused the fall). Flickinger's allegations that it was raining outside, that water was coming into the covered middle bay, and that water was falling from Flickinger's vehicle, creating an accumulation that caused her to fall, are enough. (Doc. # 30 at ¶¶ 41-45, 50-70).

All of the aforementioned facts, taken as true, support a plausible inference that Love's had actual or constructive notice of a dangerous hazard in the form of an unreasonable accumulation of water near or under Flickinger's vehicle. See Drew v. Istar Fin., Inc., 661 S.E.2d 686, 690 (Ct. App. Ga.

2008) ("A proprietor's constructive knowledge of such a hazard can be shown either by evidence that an employee of the proprietor was in the immediate area of the hazard and could have seen and removed it, or by evidence that the proprietor failed to exercise reasonable care in inspecting the premises."). Therefore, the first prong is satisfied.

As to the second prong, Flickinger alleges that she did not see the puddle due to the height of her vehicle, and the manner in which she exited the vehicle – facing the interior of the truck – which she found to be the safest way to do so. (Doc. # 30 at ¶ 64). These allegations, combined with the fact that Flickinger was in her vehicle for about an hour while waiting on the repairs, that she exited while under a roofed portion of the middle bay, and that there is no indication that Flickinger had previously exited her vehicle to view the accumulation of water, also support a plausible inference that, despite exercising ordinary care, Flickinger was unaware of the puddle of water that had collected inside the middle bay near or below her vehicle. (Id. at ¶ 68); see Smith v. Toys "R" Us, Inc., 504 S.E.2d 31, 35 (Ct. App. Ga. 1998) ("Given the evidence, it is a jury question whether Smith failed to exercise ordinary care for her own safety.").

Having satisfied both prongs, Flickinger has pled a

claim upon which relief can be granted for premises liability under Georgia law. Accordingly, the Motion to Dismiss is denied as to this requested relief.

### 2. **Heightened Duties Under Georgia Law**

Next, Love's argues that the amended complaint should be dismissed because it includes certain heightened duties that are not owed by a premises owner under Georgia law. (Doc. # 31 at 7). The amended complaint alleges that Love's owed the following duties to Flickinger: (1) "the duty of exercising ordinary care in keeping, owning, operating, and/or maintaining the above truck stop garage and the approaches in safe condition"; (2) "the duty of keeping its business premises free of hazards that it had actual or constructive knowledge were present,"; (3) "the duty of warning its invitees of dangerous conditions on its premises that it knew, or with the exercise of reasonable care should have known or had constructive knowledge, about"; (4) "the duty to inspect its business premises for any hazards to its invitees"; and (5) "the duty to clean its business premises to remove or resolve any hazards to its invitees." (Doc. # 30 at ¶ 8-12). Love's does not dispute the existence of the first duty. (Doc. # 31 at 8). Accordingly, the Court will address only the four remaining duties.

Regarding the second alleged duty, the amended complaint states that Love's owes Flickinger "the duty of keeping its business premises free of hazards that it had actual or constructive knowledge were present." (Doc. # 30 at ¶ 9). However, Georgia law provides that the duty of ordinary care imposed between a premises owner and invitee "is not a duty to absolutely prevent injury as a proprietor is not an ensurer of the safety of its customers." Thomas v. Home Depot, U.S.A., Inc., 644 S.E.2d 538, 540 (Ct. App. Ga. 2007). Rather, Georgia law imposes a balancing reasonableness standard – a determination of which party was in the best position to discover the alleged hazard – something that is markedly missing from this averred duty. See Hayward v. Kroger Co., 733 S.E.2d 7, 11 (Ct. App. Ga. 2012) ("Moreover, as our Supreme Court has recently reiterated, there can be no recovery in a premises liability case without evidence tending to show that the owner/occupier has superior knowledge of the perilous instrumentality[.]" (emphasis omitted and citation omitted)); (Doc. # 30 at ¶ 9). Therefore, to the extent that Flickinger attempts to create a heightened duty that does not depend on whether the plaintiff herself acted reasonably, this is a misstatement of Georgia law.

The third and fourth proffered duties – the duty to warn

and the duty to inspect – fail for the same reason. Neither
duty, as alleged in Flickinger's amended complaint, provide
that they depend on which party has the superior knowledge.
(Doc. # 30 at ¶ 11-12). Although a duty to inspect premises
exists under Georgia law, this duty exists only if the owner
has superior knowledge of the hazard over the invitee. See
Sipple v. Newman, 722 S.E.2d 348, 350 (Ct. App. Ga. 2012)
("An owner's obligation to keep the premises safe includes a
duty to inspect the premises to discover possible dangerous
conditions of which the owner does not know and to take
reasonable precautions to protect the invitee from dangers
which are foreseeable from the arrangement and use of the
premises. Still, the owner's duty to exercise ordinary care
is not a duty to absolutely prevent injury as an owner is not
an ensurer of the safety of its invitees. The true ground of
liability is the owner's superior knowledge of the perilous
instrumentality and the danger therefrom to persons going
upon the property." (citation omitted)). The same standard
applies to the duty to warn. See Gray v. Oliver, 530 S.E.2d
241, 243 (Ct. App. Ga. 2000) ("However, even if it were
hazardous as plaintiff asserts, the condition was open and
obvious, and thus, in the exercise of ordinary care, plaintiff
could have avoided it. There is no duty to warn of the

obvious. Moreover, where, as here, the plaintiff had as much knowledge of the hazard as did the owner, plaintiff assumes the risk as to the known condition by voluntarily acting in the face of such knowledge." (citations omitted)).

Lastly, the Court finds that a premises owner does not owe an absolute duty to clean to an invitee under Georgia law. And, Flickinger has provided no citation to such a duty in her response to the instant Motion. (Doc. # 32). Even assuming that this duty exists, again, "the true ground of liability is the proprietor's superior knowledge of the perilous condition and the danger therefrom to persons going upon the property." Spann v. Calhoun Cnty. Hosp. Auth., 430 S.E.2d 828, 828 (Ct. App. Ga. 1993).

Accordingly, Count I is dismissed only to the extent that it attempts to create heightened duties not owed to invitees under Georgia law. See Lockhart v. Steiner Mgmt. Servs., LLC, No. 10-24665-CIV, 2011 WL 1743766, at *2 (S.D. Fla. May 6, 2011) (dismissing with prejudice a negligence claim that alleged heightened duties not owed by the defendant). This, however, does not prevent Flickinger from later using facts or theories related to these duties in arguing that Love's breached its duty of ordinary care.

### 3. **Failure to Warn Theory**

Love's next argues that Flickinger's failure to warn claim fails under Georgia law because she "does not allege any facts supporting that [Love's] knowledge of the alleged condition was superior [to] that of [Flickinger]." (Doc. # 31 at 9). This "failure to warn claim" appears to be a theory of liability within Flickinger's premises liability claim, considering that it is not represented in a separate cause of action. (Doc. # 30 at ¶ 113); see also Tomsic v. Marriott Int'l, Inc., 739 S.E.2d 521, 532 (Ct. App. Ga. 2013) ("But the failure to warn that Tomsic alleged in her complaint was not a separate basis for liability but rather a means by which Marriott might have breached a duty of care it owed under a theory of premises liability.").

Under Georgia law, "an owner or occupier of land is liable to invitees for injuries they sustain as a result of his [or her] failure to warn them of dangers which he [or she] was aware of, or in the exercise of reasonable care should have known." Benson-Jones v. Sysco Food Servs. of Atl., LLC, 651 S.E.2d 839, 844 (Ct. App. Ga. 2007) (citation omitted). The owner must have "either actual or constructive knowledge of defects or dangers on the premises." Murphy v. Blue Bird Body Co., 429 S.E.2d 530, 534 (Ct. App. Ga. 1993).

Here, Flickinger has sufficiently alleged her failure to warn theory of liability as to her premises liability claim. As previously noted, Flickinger has provided enough facts showing that the Love's mechanic was aware of the accumulation of water on the ground and that Flickinger was not. See Berson v. Am. Golf Corp., 595 S.E.2d 622, 625 (Ct. App. Ga. 2004) (reversing a grant of summary judgment where it was unclear who had superior knowledge of a slippery floor and the premises owner failed to warn the plaintiff of said floor). Therefore, the Motion is denied as to this requested relief.

### 4. **Rule 10(b)**

Finally, Love's moves to dismiss the amended complaint on the basis that it does not "make all statements . . . in consecutively numbered paragraphs, and fails to limit statements to a single set of circumstances." (Doc. # 31 at 6-9). Rule 10(b) of the Federal Rules of Civil Procedure provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "The failure to identify claims with sufficient clarity to enable the defendants to frame a response pleading constitutes a 'shotgun pleading.'" Morris v. First Fin. Corp., No. 1:07-CV-0614-CAP, 2007 WL 9710507, at *2 (N.D. Ga. Oct. 10, 2007).

16

Here, Love's points only to Paragraph 85 of the amended complaint as a violation of Rule 10(b), which states:

> 85.   That the Love's mechanic was in a superior position to see and know of the dangerous condition identified in paragraph 72 because the Love's mechanic was present inside the middle bay of the above Love's repair for at least an hour working on Plaintiff's trailer and had [a] clear, unobstructed view of the condition of the accumulated water on [the] shiny concrete floor of the middle bay of the Love's repair center, and was in a position to see the water on the floor underneath and beside the driver's side of Plaintiff's tractor truck when Plaintiff backed up her tractor truck into the middle bay to pay for the services the Defendant provided her. Whereas, Plaintiff, due to occupying her tractor truck could not see the accumulation of water on the shiny concrete floor when she pulled into the middle bay, and could not see the accumulation of water on the shiny concrete floor of the middle bay while her  trailer was being service[d], and could not see the accumulation of water on the shiny concrete floor as she backed her tractor truck up into the middle bay at the Love's mechanic's invitation. Also, Plaintiff could not see the accumulation of water on the shiny concrete floor underneath and beside the driver's side of her tractor truck due to the way she has to exit her tractor truck. In other words, the Love's mechanic's vantage point of the dangerous condition, i.e. the accumulated water on the shiny concrete floor of the middle bay of the Love's repair center, was superior than that of the Plaintiff's.

(Doc. # 30 at ¶ 85). Flickinger argues that despite the length of this paragraph, it is constrained to a single set of circumstances because the statements relate to whether Love's or Flickinger was in a superior position to see the dangerous

condition in question, and it reiterates facts already alleged elsewhere in the complaint. (Doc. # 32 at 16-17).

The Court agrees with Love's that Paragraph 85 could have been divided into additional paragraphs so as to make it clearer, but the Court also finds that this paragraph is not so convoluted so as to necessitate dismissal. Although the paragraph is lengthy, it explains which party was in a superior position to see the accumulation of water below or near Flickinger's vehicle. (Doc. # 30 at ¶ 85). Love's will be able to affirm or deny each of these facts – both in response to other parts of the complaint, and Paragraph 85 itself. See S. Coal Corp. v. Drummond Coal Sales, Inc., No. 1:17-CV-1104-AT, 2017 WL 7550765, at *10 (N.D. Ga. Nov. 15, 2017) ("Rule 10(b) is satisfied when a defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." (citation omitted)).

The rest of the amended complaint includes succinct, numbered paragraphs, and the only cause of action is alleged in Count I. (Doc. # 30). This is not the sort of incoherent, unorganized complaint that generally fails under Rule 10(b). See, e.g., Darby v. United Auto. Ins. Co., No. 20-22777-CIV-MORENO, 2020 WL 3977176, at *3 (S.D. Fla. July 14, 2020) (dismissing a complaint that did not include any numbered

paragraphs or enumerated causes of action); <u>Eddins v. U.S.</u> <u>Air Force</u>, No. 15-0350-WS-M, 2016 WL 660927, at *3 (S.D. Ala. Feb. 18, 2016) ("The first [three and a half] pages of the amended complaint contain no numbered paragraphs, and both they and the subsequent numbered paragraphs are unmanageably long (up to a full page)."). Accordingly, the Court finds that the amended complaint does not violate Rule 10(b), and the Motion is denied as to this requested relief.

### B. <u>Motion to Strike</u>

Love's also moves to strike "multiple unauthenticated photograph[s]" from Flickinger's amended complaint. (Doc. # 31 at 12). Love's argues that "[t]he attachment of the photographs is improper as [Flickinger] is attempting to use the photograph[s] as a replacement for a plain statement of [her] claim and of the facts entitling [her] to relief." (<u>Id.</u>). Love's further explains that it is unable to either admit or deny these attached photographs, especially because they contain written annotations. (<u>Id.</u>). Flickinger responds that the attached images were meant to provide Love's with more notice as to where Flickinger fell. (Doc. # 30 at 17).

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f). However, motions to strike are generally disfavored in the Eleventh Circuit. See Williams v. Delray Auto Mall, Inc., 289 F.R.D. 697, 699 (S.D. Fla. 2013) ("[A] motion to strike is a drastic remedy, which is disfavored by the courts." (citation omitted)).

Here, the amended complaint includes three attachments. The first attachment, labeled "Exhibit A," is a photograph of an aerial view of the Love's truck stop where the incident occurred. (Doc. # 30-1). The image contains three labels, pointing to the "gas station/convenience store/McDonalds," the "tractor truck gas station," and the "Love's repair center" located on or near the site. (Id.). The second attachment, labeled "Exhibit B," is a photograph of the "front of Love's repair center." (Doc. # 30-2). The third attachment, labeled "Exhibit C," is a photograph of the "rear of Love's repair center." (Doc. # 30-3). All of the photographs were apparently taken from Google Images. (Doc. # 31 at 18).

The Court finds these three exhibits immaterial. Indeed, courts have regularly stricken photographic or other non-written exhibits from complaints for this very reason. See, e.g., Nkemakolam v. St. Johns Mil. Sch., 876 F. Supp. 2d 1240, 1247 (D. Kan. 2012) (citing cases); Hahn v. City of Carlsbad, No. 15-cv-2007 DMS (BGS), 2016 WL 3211801, at *4 (S.D. Cal.

Feb. 3, 2016) ("Because the video is not a written instrument under Rule 10(c), it is immaterial."); Equal Emp. Opportunity Comm'n v. Bo-Cherry, Inc., No. 3:13-cv-00210-MOC-DSC, 2013 WL 2317724, at *3-4 (W.D.N.C. May 28, 2013) (striking a photo exhibit from a complaint without prejudice). In Nkemakolam v. St. Johns Military School, the District of Kansas explained why such exhibits are considered immaterial under the Federal Rules of Civil Procedure:

> The Rules consistently describe pleadings as containing 'statements' and 'allegations,' and such language does not contemplate photographs or other objects. Rule 10, which is titled 'Form of Pleadings,' address[es] exhibits to pleadings as follows: 'A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.' The courts that have considered this issue have concluded that the Rules thus do not contemplate the attachment of exhibits, such as photographs, that are not written instruments. For instance, the Third Circuit has stated: 'The case law demonstrates, however, that the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically contracts, notes, and other writings on which a party's action or defense is based.'

Nkemakolam, 876 F. Supp. 2d at 1246-47 (citations omitted).

Although a small number of courts have declined to strike photographic exhibits, the Court agrees with the majority of courts that these exhibits are immaterial. See, e.g., Stacey v. Peoria Cnty., No. 13-CV-1051, 2013 WL 3279997, at *8 (C.D. Ill. June 27, 2013) ("The photographs add information

21

and detail to the allegations in the text of the Complaint. The photographs, thus, aid the parties and the Court in understanding the allegations. The photographs also are not scandalous or impertinent."); cf. Bo-Cherry, 2013 WL 2317724, at *3 ("There is little case law addressing this issue, but the cases the court could find appear to unequivocally hold that photographs should not be attached as exhibits to either a complaint or answer.").

Accordingly, Exhibits A, B, and C are stricken from the amended complaint. See Rowan v. Sunflower Elec. Power Corp., No. 15-cv-9227-JWL-TJJ, 2015 WL 8024320, at *2 (D. Kan. Dec. 4, 2015) ("The photographs do not add to the substance of the complaint, and are therefore immaterial."). Because the Court strikes these exhibits without prejudice, Flickinger may – if appropriate – still seek to introduce them in a later motion, response, or at trial. See Bo-Cherry, 2013 WL 2317724, at *4 ("The court will strike Exhibit B; however, such striking is without prejudice as to defendant later seeking introduction of such photograph in conjunction with an appropriate motion or response, or at trial.").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Love's Travel Stops & Country Stores, Inc.'s

22

Motion to Dismiss Amended Complaint (Doc. # 31) is **GRANTED** in part and **DENIED** in part.

(2) Count I is dismissed to the extent it alleges heightened duties not owed by a premises owner to an invitee under Georgia law, as set forth herein. However, Count I remains insofar as it alleges premises liability under the appropriate standard of care in Georgia.

(2) Love's Motion to Strike (Doc. # 31) is **GRANTED.** Exhibits A, B, and C to the amended complaint are hereby stricken as immaterial. (Doc. ## 30-1; 30-2; 30-3).

(3) Love's answer to the amended complaint is due within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 13th day of January, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE